IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

HOSAKOTE M. NAGARAJ,

           Plaintiff,

vs.

THE PHYSICIAN NETWORK,

           Defendant.

4:20-CV-3021

MEMORANDUM AND ORDER

This matter is before the Court on both the plaintiff's motions in limine (filing 77; filing 83) and the defendant's motion in limine (filing 76). The Court will grant and deny these motions as outlined below.

### PLAINTIFF'S MOTIONS IN LIMINE

1. The defendant does not oppose paragraph one of plaintiff's motion in limine. Filing 77 at 1; filing 85 at 1. Therefore, the plaintiff's motion is granted as to this matter, and the defendant shall refrain from making "any allegation that a verdict for the Plaintiff would result in financial hardship on the Defendant."

2. The defendant does not oppose paragraph two of plaintiff's motion in limine. Filing 77 at 1; filing 85 at 2. Therefore, the plaintiff's motion is granted as to this matter, and the defendant shall refrain from making "any allegation that a verdict from the Plaintiff would result in an increase in health care costs to Defendant's patients, require Defendant to lay off or terminate employees, and/or cause a reduction in patient services or closure of facilities."

3. The defendant does, however, oppose the plaintiff's motion to preclude "any evidence related to the alleged non-discrimination by Defendant of other male physicians and/or other East Indian physicians employed by Defendant."

Filing 77 at 1. As explained in the Court's order on summary judgment, the defendant's evidence that it retained an East Indian male surgeon who committed misconduct of comparable seriousness to the plaintiff was not enough to negate the inference of discrimination established by the plaintiff at that stage in the proceedings. Filing 65 at 13. However, that does not mean this evidence may not be relevant at trial.

While it is true that the plaintiff's argument is not that *all* physicians who share his national origin were discriminated against, evidence that a *similarly situated* member of the plaintiff's protected class(es) was treated more leniently *may* cast doubt on a plaintiff's claim that he was treated more adversely than relevant comparators outside of his protected class *because of his protected status*. See *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 957 (8th Cir. 2012). In the same way, comparator evidence of individuals outside of the plaintiff's protected class who engaged in similar misconduct as the plaintiff and were disciplined in a similar manner may negate a plaintiff's established presumption of discrimination. See *Hitt v. Harsco Corp.*, 356 F.3d 920, 925 (8th Cir. 2004). Thus, such evidence may be relevant to the defendant's case, and the Court will not grant a blanket exclusion of all such evidence before trial.

4. The defendant does not oppose the plaintiff's motion to "exclude any finding or determination of the Nebraska Equal Opportunity Commission regarding Plaintiff's administrative charge filed against Defendant." Filing 85 at 4 (emphasis provided). Therefore, the plaintiff's motion to exclude *findings and determinations* of the Commission will be granted. But, the defendant does oppose the plaintiff's motion to exclude the *Charge of Discrimination* that the plaintiff filed with the Commission. Filing 85 at 4; *see* filing 44-3. The plaintiff, when signing and submitting the charge—which outlines his initial claims of discrimination against the defendant—swore or affirmed that he read the

document and that it was true to the best of his knowledge, information and belief. Filing 44-3. The document was also notarized. The Court agrees that, when offered by the defendant, this document is not hearsay. Fed. R. Evid. 801(2)(A). Therefore—while the Court will reserve any determination on the admissibility of this evidence for trial, when it can more appropriately determine the relevance and probative value of this evidence based on the purposes for which it is offered—the plaintiff's motion to exclude this evidence altogether is denied. But until the Court can make a definitive ruling in the context of trial, this evidence should not be used by the parties during voir dire or opening statements.

     5. Next, the plaintiff moves the Court to exclude any evidence that "Gina Mentzer, M.D., a fact witness in this case, lost one of her twins while she was pregnant multiple years ago." Filing 83 at 1. The defendant opposes this motion, arguing that this evidence may help to explain Dr. Mentzer's inappropriate interactions with staff, and to the extent the plaintiff intends to "justify his bad behavior," Dr. Mentzer should be allowed to as well. Filing 90 at 2.

     It seems to be the plaintiff's intent to introduce evidence showing that comparators like Dr. Mentzer engaged in similar misconduct but were treated more favorably, both to establish an inference of discrimination and discredit any non-discriminatory reason for the adverse employment action against him. That being the case, the Court finds the circumstances surrounding each comparator's discipline, or lack thereof, to be highly relevant. Specifically, the defendant should be allowed to offer evidence explaining its reasoning for the actions taken against each comparator when the plaintiff's claim is that they were treated more favorably because of their race, national origin, or gender.

However, the Court recognizes this evidence could create unfair prejudice by garnering sympathy for Dr. Mentzer and any leniency the defendant may have afforded her because of this situation. Thus, the plaintiff's motion to exclude this evidence altogether is denied, at this stage, without prejudice to further objection at trial. At that time, the Court will determine the extent of the evidence the defendant will be able to offer on this matter pursuant to Fed. R. Evid. 403. But until the Court can make a definitive ruling in the context of trial, this evidence should not be used by the parties during voir dire or opening statements.

6. Lastly, the plaintiff seeks to exclude any evidence that plaintiff's counsel "represented a fact witness, Amanda Yashirin, in a legal matter multiple years ago." Filing 83 at 1. In opposing this request, the defendant argues this evidence is relevant to credibility and bias, as plaintiff's counsel represented Ms. Yashirin less than three years ago in an employment-related matter in which she was the plaintiff, and helped her negotiate a settlement. Filing 90 at 2.

"Assessing the credibility of witnesses is a task for the jury." *United States v. Trotter*, 837 F.3d 864, 868 (8th Cir. 2016). Generally, under Fed. R. Evid. 608(b), a party's ability to "impugn the character for truthfulness of an opposing party's witness is limited to questioning the witness on cross-examination." *United States v. Capozzi*, 883 F.2d 608, 615-16 (8th Cir. 1989). However, facts showing a witness's bias are not collateral, and extrinsic evidence may be permitted to prove such bias. *Id.* Ultimately, "the introduction of extrinsic evidence to attack credibility is subject to the discretion of the trial court." *United States v. Elliot*, 89 F.3d 1360, 1368 (8th Cir. 1996).

Whether cross-examination on this topic will prove relevant depends, to great extent, on the substance of the testimony adduced by the plaintiff—but

it suffices to say that, at this point, the defendant has not demonstrated that the prior attorney-client relationship is sufficiently relevant to warrant presenting the jury with evidence of a completely different proceeding. The Court will, accordingly, sustain the plaintiff's motion in limine on this point, subject to reexamination upon an appropriate proffer at trial outside of the presence of the jury.

DEFENDANT'S MOTION IN LIMINE

1. The defendant first moves to exclude "any reference or mention to alleged medical malpractice committed by Dr. Andrea Barker, including, but not limited to, rumors that Dr. Barker left an operating room mid-procedure to smoke a cigarette and the lawsuit filed by James Hassett." Filing 76 at 1. First, the defendant argues that medical malpractice and failing to treat co-workers with respect are not the same conduct, meaning Dr. Barker is not a similarly situated comparator. Filing 76-1 at 2-3. Second, the defendant argues that any evidence regarding Dr. Barker's malpractice is inadmissible hearsay. Filing 76-1 at 3.

In arguing that Dr. Barker is not a similarly situated comparator, the defendant fails to paint a full picture of the evidence in the record. In his opposition to the defendant's motion for summary judgment, the plaintiff presented evidence that Dr. Barker was part of a group of physicians referred to as the "notorious three" based on consistent staff complaints about their disrespectful conduct. Filing 56 at 12-13. In addition, Dr. Barker was allegedly accused of leaving an operating room mid-procedure, asked by the defendant to stop performing certain procedures due to lack of technical skills, and later temporarily suspended by the defendant for providing a "substandard quality of care" that jeopardized patient care and treatment. Filing 56 at 13.

As stated previously in this Court's order on summary judgment, to demonstrate that employees are similarly situated, a plaintiff need only establish that he was treated differently than other employees whose violations were comparable in seriousness. Filing 65 at 11-12 (citing *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1081 (8th Cir. 2013)). And, the Eighth Circuit has cautioned against applying this concept "too narrowly":

> To require that employees always have to engage in the exact same offense as a prerequisite for finding them similarly situated would result in a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination. Common sense as well as our case law dictate that we reject such an approach.

*Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 488 (8th Cir. 1998), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

Assuming there is evidence that Dr. Barker, a vascular surgeon, was repeatedly abusive to staff in a way that would allow a reasonable jury to find her similarly situated to the plaintiff, *see* filing 65 at 11-14, the fact that she also allegedly engaged in arguably more serious misconduct—putting patient care and treatment in jeopardy—does not negate this finding. In fact, it may be relevant that one of the defendant's surgeons was engaging in similar misconduct as the plaintiff *and* also providing substandard patient care, but still received more lenient treatment than the plaintiff. Of course, if the plaintiff can only offer such evidence in the form of hearsay—which at this point is the only evidence in the record of Dr. Barker's alleged incident

involving Mr. Hassett—it will be excluded unless it falls within an appropriate hearsay exception.

And, the Court will limit any evidence regarding Dr. Barker's alleged malpractice to *the underlying facts of each incident*—for example, that she allegedly left the operating room during a procedure, and the actions, if any, the defendant took in response—while excluding evidence of separate, legal matters that arose from these incidents. In sum, the Court will deny, at this stage, the defendant's motion to exclude this evidence subject to the above limitations.

2. For the same reasons, the defendant's motion to exclude "any reference or mention to alleged medical fraud committed by Dr. Iyad Azzam, including, but not limited to, allegations that he performed unnecessary procedures which could have resulted in overbilling Medicare and/or Medicaid" is denied. Filing 76-1 at 4. Assuming there is evidence in the record that Dr. Azzam engaged in conduct of comparable seriousness—mistreatment of staff—a reasonable jury could determine that Dr. Azzam was similarly situated to the plaintiff. *See* filing 56 at 14. And the defendant admits that Dr. Azzam's medical fraud involved the defendant "dealing with an employee who was potentially defrauding the federal government"—which is arguably more serious misconduct, and potentially criminal. Filing 76-1 at 5. Thus, a reasonable jury could determine that Dr. Azzam was similarly situated to the plaintiff as he allegedly engaged in misconduct of both comparable and more extreme severity.

As argued by the plaintiff, filing 87, it may be relevant that Dr. Azzam's contract was not terminated nor was he disciplined for any staff complaints of mistreatment against him, and the defendant only took disciplinary action against him when his conduct involved potential defrauding of the federal

government. In other words, such a chain of events may be relevant to the question of whether Dr. Azzam was treated more leniently. Thus, the defendant's motion to exclude this evidence is also denied at this stage.

3. Next, the defendant moves the Court to "prohibit any reference or mention to Plaintiff's alleged damages for taxes paid on his 401(k) retirement account." Filing 76 at 1. The defendant argues that such damages are inappropriate because any allegedly discriminatory actions by the defendant "were not the proximate cause of the tax penalty." Filing 76-1 at 4. Specifically, the defendant points to the plaintiff's deposition in which he admitted that the defendant provided him with information on how to manage his retirement account post-separation and he "totally didn't do that one." Filing 76-1 at 4.

Given this context, the Court agrees with the defendant that there is no evidence, at this point, that the defendant's allegedly discriminatory conduct was the proximate cause of the plaintiff's failing to timely complete the proper 401(k) documents and incurring a penalty. While proximate cause is generally a question of fact for the jury, "where reasonable minds can arrive at only one conclusion, proximate cause is a question of law." *Green Plains Otter Tail, LLC v. Pro-Environ., Inc.*, 953 F.3d 541, 547 (8th Cir. 2020). Therefore, the Court will grant the defendant's motion to exclude this evidence.

4. The defendant also seeks to exclude "any reference or mention to Plaintiff's alleged emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life not previously disclosed in his Interrogatory answers or deposition testimony, and . . . all such testimony from witnesses other than Plaintiff." Filing 76-1 at 5. In support of this motion, the defendant argues that (1) the plaintiff's interrogatory answers and deposition testimony are the only evidence of his emotional distress that the Court should allow, and (2) the plaintiff's emotional distress claim is not

supported by competent evidence because "the plaintiff has not disclosed any experts and testimony by Mrs. Nagaraj would be impermissible lay witness opinion." Filing 76-1 at 5.

While "an award of damages for emotional distress must be supported by competent evidence of genuine injury . . . a compensatory damage award may be based solely on plaintiff's own testimony." *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999) (citation omitted). Accordingly, "medical or other expert evidence is not required to prove emotional distress." *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th Cir. 1997) (citation omitted). And, testimony by the plaintiff's friends or family based on their personal perception may be offered as evidence *of the plaintiff's emotional distress. See id.*; *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 357 (8th Cir. 1997). Where the plaintiff has agreed to limit Mrs. Nagaraj's testimony "to matters of which she possesses personal knowledge," filing 87 at 7, the Court has no reason to exclude her testimony. And as the defendant has noted, the plaintiff has not disclosed an expert witness who will testify on this matter, negating the argument that Mrs. Nagaraj's testimony would be needlessly cumulative.

Additionally, the Court finds no merit to the defendant's argument that the plaintiff's evidence for such a claim should be limited to his interrogatory answers and deposition testimony. The defendant was put on notice of the plaintiff's intent to seek compensatory damages, including damages for emotional distress, from the pleadings. Filing 1-1 at 9. Accordingly, during the plaintiff's deposition, the defendant made it a point to ask about any professional treatment the plaintiff may have received for stress or anxiety. Filing 53-1 at 25-26.

Although the plaintiff disclosed that he did not seek professional treatment for emotional distress, filing 76-1 at 5, medical evidence is not a

- 9 -

prerequisite to seeking such damages, *Bailey v. Runyon*, 220 F.3d 879, 880 (8th Cir. 2000). That the defendant did not inquire more into the causes and manifestations of the plaintiff's alleged distress during discovery will not limit the evidence that the plaintiff can offer to prove such damages. Therefore, the Court will deny the defendant's motion to exclude evidence regarding the plaintiff's emotional distress damages, including such evidence offered by Mrs. Nagaraj based on her personal knowledge. However, the Court will note that all evidence must focus on *the plaintiff's* emotional distress that resulted from the defendant's alleged actions. Accordingly, evidence about the emotional distress suffered by anyone other than the plaintiff is inadmissible to the extent it is not directly relevant to the plaintiff's emotional distress.

5. Lastly, the defendant moves for the Court to exclude "all testimony, arguments, or evidence regarding Plaintiff's dismissed claims against [the defendant], including Plaintiff's claims for retaliation and breach of the parties' written employment agreement." Filing 76 at 2. The defendant argues that, under Fed. R. Evid. 401, this evidence is not relevant to the plaintiff's employment discrimination claim, and that it should also be excluded under Fed. R. Evid. 403 given that its probative value is substantially outweighed by its potential to confuse the jury. Filing 76-1 at 6-7.

The plaintiff has agreed not to request relief on these claims, filing 87 at 7-8, and the Court agrees with the plaintiff that the underlying facts the plaintiff used to support these claims may still be relevant to the claims being tried, *see* filing 87 at 7-8. Thus, such evidence may be admissible at trial *to the extent* that evidence involving alleged violations of the employment agreement or retaliation *support an inference* of intentional discrimination by the defendant. Accordingly, the Court will deny the defendant's motion to exclude all such evidence at this time and will reserve its ruling on specific evidence of

this nature for trial when relevance and prejudice can be better determined based on the purposes for which it is offered.

IT IS ORDERED:

1. The plaintiff's motion in limine (filing 77) is granted in part and in part denied as set forth above.

2. The plaintiff's supplemental motion in limine (filing 83) is granted in part and in part denied as set forth above.

3. The defendant's motion in limine (filing 76) is granted in part and in part denied as set forth above.

Dated this 30th day of November, 2021.

BY THE COURT:

John M. Gerrard
United States District Judge

- 11 -